UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CHRISTOPHER THOMPSON                                                                                  PLAINTIFF

v.                                         No. 2:20-CV-02167

RAYMOND OTTMANN, in his individual                                                                DEFENDANT
capacity

**OPINION AND ORDER**

Before the Court is Defendant Raymond Ottmann's motion (Doc. 44) for summary judgment, brief (Doc. 45) in support, and statement of facts (Doc. 46). Plaintiff Christopher Thompson filed a response (Doc. 48) in opposition and a statement of facts (Doc. 47). Defendant filed a reply (Doc. 49). For the reasons set forth below, the motion will be GRANTED.

**I.     Background**

This action arises out of Plaintiff's employment with the University of Arkansas at Fort Smith Police Department ("UAFS PD"). Defendant, a white man, currently serves as the Police Chief of UAFS PD. Plaintiff, an African American man, began his career with the UAFS PD in October of 2012. At the beginning of his career Plaintiff received favorable annual reviews; however, beginning in 2014, Plaintiff began receiving less favorable performance reviews and in 2015 and 2016 Plaintiff received verbal warnings.

Defendant was hired as the Police Chief in 2015. Plaintiff and Defendant did not have a smooth working relationship, and Plaintiff alleges there were "several instances of mistreatment/harassment." (Doc. 47-1, p. 2, ¶ 15). On one occasion, Defendant made a comment that Plaintiff looked like George Jefferson, an African American character from the 1970s and 80s sitcoms *All in the Family* and *The Jeffersons*. Plaintiff alleges several other negative encounters with Defendant. (Doc. 47-1, pp. 2–4, ¶¶ 16–39). According to Plaintiff, Defendant suggested

1

Plaintiff should attempt to get a job with the Fort Smith Police Department rather than remain with UAFS PD. On one occasion, Plaintiff's office was vandalized and Defendant did not respond to Plaintiff's department-wide email about the event. Defendant changed Plaintiff's midnight shifts, and then disciplined Plaintiff for failing to report for duty. Defendant gave other officers holidays off and scheduled Plaintiff to cover their shifts but would not give Plaintiff any holidays off. Defendant yelled and swore at Plaintiff. Defendant abandoned the previous testing process UAFS PD used for promotions and promoted two officers, neither of whom was African American, without testing. Defendant publicly suggested Plaintiff should resign and put Plaintiff on a six-day schedule with fewer than 40 hours per week. Defendant refused to follow up on Plaintiff's report of being targeted with a green laser on a night shift. Defendant refused to place newer officers on the night shift despite Plaintiff's requests to move to shifts that would allow him to spend time with his children and schooling. Defendant also yelled at Plaintiff for failing to do another employee's job and made Plaintiff stay after his shift to complete the task. Of the facts identified by Plaintiff, the "George Jefferson" reference is the only interaction between Plaintiff and Defendant that directly addressed Plaintiff's race.

On August 24, 2017, Plaintiff responded to a call reporting an intoxicated man in a campus dormitory who had been throwing up, had passed out, and was foaming at the mouth. When Plaintiff arrived at the scene, he met with the two female students and the resident assistant who made the report. Plaintiff crossed the threshold of the room where the young man was lying on the floor with no shirt and was "squirming around and moaning." (Doc. 44-3). Plaintiff conducted a visual inspection of the intoxicated man, believed him to be in no true danger, and left him lying on the ground while Plaintiff questioned the women who were present. The questioning took approximately twenty minutes. During this time Plaintiff did not render any aid to the intoxicated

man, and at one point one of the women entered the room to try to reposition the intoxicated man to keep him off his back and prevent him from choking.  According to the resident assistant present at the scene, "from the time Officer Thompson arrived until the paramedics came in, Officer Thompson did not set foot in the room to check on the student." (Doc. 44-2, p. 11).  The encounter was recorded on bodycam footage which no party has submitted to the Court.

After this encounter the resident assistant contacted Defendant to file a complaint regarding how Plaintiff had handled the call.  After reviewing the bodycam footage, Defendant concluded Plaintiff "had been grossly negligent and that his conduct warranted termination," and that Plaintiffs actions could have resulted in the death of the intoxicated man.  (Doc. 44-2, ¶ 17).  Defendant then showed the footage to his supervisor, Dr. Brad Sherriff, who "considered [Plaintiff's] actions in the video appalling." (Doc. 44-4, ¶ 10).  Defendant informed Dr. Sherriff that he recommended terminating Defendant because Defendant violated basic training and protocol and risked the safety of a campus visitor.  Dr. Sherriff informed Defendant that he supported his decision to terminate Plaintiff for cause.

On September 1, 2017, Plaintiff was called into a meeting with Defendant and the human resources director and was terminated for cause.  Four days prior to his termination Plaintiff had complained to Dr. Sherriff about how he was treated by Defendant, and though Dr. Sherriff informed Defendant of Plaintiff's grievances, he "did not tell [Defendant] that [Plaintiff] had complained of discrimination as none of his complaints to me were characterized that way, other than the purported racist remark, about which [Plaintiff] provided no details" and which seemed like a less significant concern.  (Doc. 44-4, ¶ 7).

After his termination Plaintiff filed the instant action against the University of Arkansas at Fort Smith and Defendant in both his official and personal capacity, asserting claims for race and

3

age discrimination, hostile work environment, and retaliation in violation of Title VII, 42 U.S.C. §§ 1981-83, the Due Process Clause of the United States Constitution, the Age Discrimination in Employment Act ("ADEA"), and the Arkansas Civil Rights Act ("ACRA"). The University of Arkansas at Fort Smith and Defendant filed a motion to dismiss, which was granted in part and denied in part. (Doc. 37). The Court dismissed all claims against the University and Defendant in his official capacity, as well all claims except for the § 1981 claims for race discrimination, hostile work environment, and retaliation asserted against Defendant in his personal capacity. Defendant has filed a motion for summary judgment arguing that he had a legitimate, nonpretextual reason to terminate Plaintiff's employment because Defendant mishandled the August 24, 2017 call, and therefore Defendant is entitled to summary judgment.

**II.      Legal Standard**

On a motion for summary judgment the burden is on the moving party to show that there is no genuine dispute of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Once the movant has met his burden, the nonmovant must present specific facts showing a genuine dispute of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). For there to be a genuine dispute of material fact, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To establish a genuine issue of material fact, the nonmoving party may not rely on "conclusory statements in his affidavit" but must "point to evidence in the record sufficient to raise a genuine issue for trial." *Jeseritz v. Potter*, 282 F.3d 542, 545-46 (8th Cir. 2002) (quoting *Mathews v. Trilogy Comm'ns, Inc.*, 143 F.3d 1160, 1164 (8th Cir.1998)); *see also Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872-73 (8th Cir. 2005) ("A

plaintiff may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor.")

**III. Analysis**

    A.    Race Discrimination

On this motion there is no direct evidence of discrimination and the *McDonnell Douglas* framework applies. *See Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004) (explaining directive evidence in discrimination cases exists when a party shows a causal link between discriminatory animus and challenged conduct); *Browning v. President Riverboat Casino-Missouri, Inc.*, 139 F.3d 631, 635 (8th Cir. 1998) (explaining stray discriminatory remarks by decisionmakers are not direct evidence of discriminatory animus unless they are related to the decisionmaking process).

Under the *McDonnell Douglas* burden-shifting framework, the plaintiff has the burden to establish a prima facie case of discrimination. *Id.* "A plaintiff meets this burden 'by showing that he or she: (1) is a member of a protected group; (2) was meeting expectations of the employer; (3) suffered an adverse employment action; and (4) suffered under circumstances permitting an inference of discrimination.'" *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012) (alterations adopted) (citing *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 550 (8th Cir. 2005)).

It is undisputed that Plaintiff is a member of a protected group and suffered an adverse employment action when he was terminated. However, Plaintiff has not established that he was meeting the expectations of his employer. Here, Defendant made the decision to terminate Plaintiff because he mishandled a call in a way which "could have resulted in a death" and the mishandled call was not Plaintiff's first occurrence of misconduct. (Doc. 47-4, p. 61).

"Even if [Plaintiff] were able to show [he] had met [his] employer's legitimate expectations,

[he] would still have to show that similarly situated employees committed the same conduct but were treated differently." *Robinson v. Am. Red Cross*, 753 F.3d 749, 755 (8th Cir. 2014). "The test for whether employees are similarly situated 'is rigorous and requires that the other employees be similarly situated in all relevant aspects before the plaintiff can introduce evidence comparing [himself] to the other employees.'" *Davis*, 685 F.3d at 681 (quoting *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008)). Plaintiff has identified no similarly situated employees in this case. There is no evidence in the record of any other UAFS PD officers who were disciplined or who had mishandled calls. Because Plaintiff has not provided evidence that he met his employer's expectations, nor that similarly situated employees were treated differently, he cannot establish a prima facie case of race discrimination. Summary judgment will be granted on this claim.

      B.      Hostile Work Environment

To establish a claim for hostile work environment, "a plaintiff must show that (1) he or she is a member of a protected class; (2) he or she is subjected to unwelcome race-based harassment; (3) the harassment was because of membership in the protected class; and (4) the harassment affected a term, condition, or privilege of his or her employment." *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005). "The workplace must be 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive.'" *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *id.*). Hostile work environment claims must meet "demanding" standards and courts are to "filter out" those complaints concerning the "ordinary tribulations of the workplace." *Id.* (quoting *Al–Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005)). "Mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate § 1981." *Id.*

6

at 519.

Here, Plaintiff identifies one race-based comment throughout his career with UAFS PD, when Defendant commented that Plaintiff reminded him of George Jefferson. Though the comment may have engendered offensive feelings in Plaintiff, one comment is not sufficient to demonstrate racial harassment that is so severe and pervasive as to affect the Plaintiff's conditions of employment under § 1981. Absent additional evidence of discriminatory animus, Plaintiff cannot show that his other complaints against Defendant were anything more than "ordinary tribulations of the workplace," and therefore summary judgment must be granted as to the hostile work environment claim. *Id.* at 518.

C. Retaliation

Finally, Plaintiff alleges that Defendant retaliated against him in violation of 42 U.S.C. § 1981 because Plaintiff was fired four days after complaining to Defendant's supervisor about Defendant's treatment of Plaintiff. To establish a prima facie case of retaliation, Plaintiff must show "(1) [he or she] engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Gacek v. Owens & Minor Distrib., Inc.*, 666 F.3d 1142, 1146 (8th Cir. 2012). "Once a plaintiff successfully establishes a prima facie case, the burden shifts to the employer to articulate 'a legitimate, non-discriminatory reason for its adverse employment action.'" *Davis v. KARK-TV, Inc.,* 421 F.3d 699, 704 (8th Cir. 2005) (quoting *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir. 1994)). "If the employer meets its burden, the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination." *Id.* (quotations omitted).

Here, the Court need not determine whether Plaintiff has established a prima facie case of

retaliation. Defendant has provided evidence of a legitimate, non-discriminatory reason for Plaintiff's termination: the mishandling of the August 24th call. Plaintiff has provided no evidence that this proffered justification is pretextual. Plaintiff argues Defendant offered shifting explanations for Plaintiff's termination, the investigation into Plaintiff's handling of the August 24th call was "shoddy," (Doc. 44 p. 6) and that the alleged misconduct did not actually cause any harm, however, none of the arguments supports a finding of pretext. Defendant never wavered in his position that Plaintiff's mishandling of the August 24th call was the primary and motivating reason for Plaintiff's termination. Although Defendant offered previous incidents to demonstrate Plaintiff's record prior to August 24th contained multiple notices to Plaintiff that his performance must improve, this is merely additional evidence to support the reasonableness of Plaintiff's termination and is not sufficient to show a shifting explanation that would support a finding of pretext.

As to whether the investigation into the August 24th incident was "shoddy," the Court does not sit as a super-personnel department. *Torlowei v. Target*, 401 F.3d 933, 935 (8th Cir. 2005). Both Defendant and Defendant's supervisor reviewed bodycam footage of the incident and determined the footage confirmed the resident assistant's narrative of what happened. Defendant has not cited to evidence of other personnel investigations that would show this investigation was sufficiently "shoddy" to support a finding of pretext. Plaintiff was offered the right to appeal his termination if he wished to dispute the conduct of the personnel investigation itself. Finally, the fact that no permanent harm came to the intoxicated man that night is immaterial to Plaintiff's case.[1]

---

[1] This same analysis would apply if Plaintiff could establish a prima facie case of discrimination. Because Plaintiff cannot show Defendant's proffered reason for Plaintiff's termination was pretext, Plaintiff's discrimination claim would fail.

Even if any of the above evidence could support a finding of pretext, Plaintiff has presented no evidence on which a jury could base a finding that Defendant's actual reason was discriminatory. Summary judgment will be granted on the retaliation claim.

## IV. Conclusion

IT IS THERFORE ORDERED that Defendant's motion (Doc. 44) for summary judgment is GRANTED. Plaintiff's claims are dismissed with prejudice. Judgment will be entered separately.

IT IS SO ORDERED this 21st day of September, 2021.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE